## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

LAMONT JACKSON,

      Petitioner,

v.                                           CASE NO:  8:11-cv-445-T-30EAJ

SECRETARY, DEPARTMENT OF
CORRECTIONS, et al.,

      Respondents.

_____/

# ORDER

      Lamont Jackson, an inmate in the Florida penal system proceeding *pro se*, petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 and challenges his conviction for robbery entered by the Twelfth Judicial Circuit Court, Sarasota County, Florida. After considering the arguments of the parties and reviewing the record, the Court concludes that Jackson's Amended Petition (Dkt. #4) should be denied.

### *Factual Background*

      The factual background is taken from the facts as described in the state court record, principally from Jackson's initial brief and the state's answer brief on direct appeal. Jackson and the victim, Mr. Llanes, encountered each other one evening while Llanes sat on a public bench waiting for a friend to transport him home. Jackson approached Llanes and asked for a cigarette. Llanes reached into his fanny pack to give Jackson a cigarette. As Llanes did so,

Jackson punched Llanes in the face and took Llanes's fanny pack. As Jackson fled, Llanes saw an approaching police unit and signaled the officers.

Officers Conway and Wagner were patrolling the area when they saw Llanes trying to get their attention. The officers saw that Llanes was about ten to fifteen feet behind Jackson. Llanes told the officers that Jackson had hit and robbed him. The officers turned their attention to Jackson, and Jackson increased from a brisk walk to a jog. Officer Wagner got out of the police car and ordered Jackson to stop.

Jackson threw the fanny pack on the ground near some bushes and continued to run. Llanes identified Jackson as the individual who had just robbed him. The officers recovered the fanny pack and examined its contents. The officers saw some personal papers in the fanny pack, along with a wallet, a set of keys, a pack of cigarettes, and a lighter. The officers did not find any drugs or drug paraphernalia and eventually released the fanny pack to Llanes. The officers prepared an inventory sheet describing the contents in the fanny pack, which Llanes signed.

After the officers arrested Jackson and read him his *Miranda* rights, he made a brief statement to a police detective about the events leading to his arrest. Jackson told the detective that he "didn't take anything from [Llanes], this is mutual combat, I punched [Llanes] or I hit [Llanes], something like that, and that was it. It was a mutual fight, I didn't take anything from [Llanes]." (Dkt. # 10, Apx. C, Vol. III, p. 209).

Before Jackson's trial, the State filed several motions in limine to prohibit the defense from asking Llanes about the presence of drugs and drug paraphernalia in the fanny pack.

The State's motions were based on the attending officers' inability to find any evidence of drugs and drug paraphernalia. The court held an evidentiary hearing on the State's motions in limine. Although defense counsel was present at the hearing, Jackson was not present at the beginning of the hearing because he was changing clothes. The court granted the State's motion but allowed the defense to ask about the contents in the fanny pack.

At trial, Jackson testified to a different set of facts, mainly that the fanny pack and its contents belonged to him. Jackson testified that as he walked near Llanes, Llanes asked him for some cocaine. Jackson shared with Llanes a "stem"[1] that Jackson had with him in his fanny pack. After using the "stem" Llanes wanted more cocaine, but Jackson refused to give Llanes any more. The confrontation quickly escalated into a physical altercation. Jackson threw Llanes to the ground and left. Jackson walked away with his fanny pack. Llanes remained close behind Jackson and continued to argue with him. Jackson explained that he ran from police and then threw away his fanny pack because it contained drugs and drug paraphernalia.

In rebuttal, the prosecutor sought to recall the police detective who interviewed Jackson after his arrest. The prosecutor wanted to impeach Jackson's trial testimony with Jackson's post-*Miranda* statement. The court expressed skepticism that Jackson's post-*Miranda* testimony was proper rebuttal. The court discussed the prosecutor's request with defense counsel. Defense counsel indicated she "wasn't even going to object" and that

---

[1] According to Jackson, a "stem" is a vial-like device made of metal or glass with the approximate diameter of an ink pen used for smoking crack cocaine (Resp. Ex. 1, V 3 T 179).

it was "fine with me" because defense counsel believed the prosecution sought to introduce Jackson's exculpatory statements. The court granted the prosecutor's request to recall the police detective. After confirming Jackson's post-*Miranda* statement, the prosecutor and the detective engaged in the following colloquy:

Q:     Did [Jackson] ever say anything to you that the fanny pack was his?

A:     No.

Q:     Did [Jackson] ever say in his statement that he sold cocaine to Mr. Llanes?

A:     No.

Q:     Did [Jackson] ever tell you that he shoved Mr. Llanes during their cocaine transaction and that Mr. Llanes became angry because of that?

A:     There was no mention of any cocaine transaction whatsoever.

Q:     Did [Jackson] tell you that he saw Mr. Llanes again at Hollywood 20 and he and Mr. Llanes began fighting about the cocaine transaction and the fact that Mr. Llanes was cheated of some money?

A:     No.

Q:     And when you gave [Jackson] an opportunity to explain that he threw the fanny pack, did [Jackson] say, "Hey, man, it was my fanny pack and I had drugs in it?"

A:     No, he said he didn't know what I was talking about. I didn't take anything from him. I didn't have anything.

(Dkt. # 10, Apx. C, Vol. III, p. 209–10).

The jury found Jackson guilty on one count of robbery with a deadly weapon, a second degree felony in violation of Florida Statute 812.13. The trial court entered judgment against Jackson on July 5, 2007. At sentencing, the court proceeded to determine Jackson's status as a habitual felony offender pursuant to Florida Statute 775.084. The State introduced Jackson's in-state felony convictions for the court's consideration: battery on a person 65 years or older, sale of cocaine, possession of cocaine, and child abuse. The State also informed the court that Jackson received sentences on 22 counts of felony theft, criminal conspiracy, and receiving stolen property in Pennsylvania from 1988 to 1989.

The court found that Jackson had two prior Florida state felony convictions: the first on June 2, 2002, case number 2001-CF-1962 for felony child abuse; and the second on September 29, 2006, case number 2006-CF-12513 for felony battery on a person 65 years of age or older. Relying on those two felony convictions, the court determined that Jackson qualified as a habitual felony offender and sentenced him to 30 years with the Florida Department of Corrections (Resp. Appx. C, Ex. 2, Vol. 7, T 24).

### *Procedural Background*

The trial court's judgment and Jackson's sentence were summarily affirmed on direct appeal. *See Jackson v. State*, 982 So. 2d 695 (Fla. 2d DCA 2008). Jackson sought post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850, which was denied. Jackson appealed his denial of post-conviction relief. On January 7, 2011, the state appellate court summarily affirmed the lower court's decision. *See Jackson v. State*, 49 So. 3d 756 (Fla. 2d DCA 2010).

On February 28, 2011, Jackson filed his petition for habeas corpus relief (Dkt. 1). The Court agrees with Respondent that the petition is timely. Subsequently, Jackson filed an "Amended Petition Under 28 U.S.C. § 2254 For Writ Of Habeas Corpus By A Person In State Custody" (Dkt. 4). Unlike the original petition, Jackson used a pre-printed § 2254 form for his amended petition. The State responded to Jackson's amended petition and Jackson filed a "Reply to Respondent's Response to Petition".

### *Standard of Review*

Because Jackson filed his federal habeas petition after April 24, 1996, the Anti-Terrorism and Effective Death Penalty Act of 1996 governs this proceeding. *Land v. Allen*, 573 F.3d 1211, 1215 (11th Cir. 2009). Section 2254(d) of Title 28, U.S.C., which creates a highly deferential standard for federal court review of state court adjudications, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Section 2254's "standard of contrary to, or involving an unreasonable application of, clearly established Federal law is difficult to meet, because the purpose of AEDPA is to ensure that

federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction." *Greene v. Fisher*, — U.S. —, 132 S.Ct. 38, 43 (2011) (quoting *Harrington v. Richter*, 562 U.S. —, —, 131 S.Ct. 770, 786 (2011)) (internal quotations and alterations omitted).

"A state court decision is 'contrary to' clearly established law if the court arrived at a conclusion opposite to one reached by the Supreme Court on a question of law, or if the state court confronted facts that are 'materially indistinguishable' from relevant Supreme Court precedent but arrived at a different result." *Boyd v. Allen*, 592 F.3d 1274, 1292–93 (11th Cir. 2010) (citing *Williams v. Taylor*, 529 U.S. 362, 405 (2000)).

"A state court decision is an 'unreasonable application' of clearly established law if the state court unreasonably extends or fails to extend a clearly established legal principle to a new context." *Id.* at 1293 (citing *Williams*, 529 U.S. at 407). "An application of federal law cannot be considered unreasonable merely because it is incorrect or erroneous; rather, a state court decision also must be unreasonable." *Id.* (citing *Williams*, 529 U.S. at 410–11). A state court's determination that a claim lacks merit precludes federal habeas relief so long as "fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court]'s precedents." *Harrington v. Richter*, 131 S.Ct. at 786. Jackson must show that the state court's denial of relief "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 787–88.

State court summary affirmances warrant deference under AEDPA because "the summary nature of a state court's decision does not lessen the deference that it is due." *Gill v. Mecusker*, 633 F.3d 1272, 1288 (11th Cir. 2011) (quoting *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir. 2002)). "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington*, 131 S.Ct. at 784. Even where a state court summarily affirms without an explanation, federal courts must determine what arguments or theories could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holdings of the Supreme Court. *Id.* at 786.

### Standard for Ineffective Assistance of Counsel Claims

*Strickland v. Washington*, 466 U.S. 668 (1984) governs an ineffective assistance of counsel claim. *Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland*, 466 U.S. at 697.

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. *Id.* at 689. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687.

> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

*Harrington v. Richter*, 562 U.S. —, —, 131 S.Ct. 770, 787–88 (2011) (citing *Strickland*, 466 U.S. at 687–89, 694).

*Strickland* claims can be disposed on either of its two grounds. *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998). *Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690–91. Jackson cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful. Rather, the standard is whether "no competent counsel would have taken the action that [petitioner's] counsel did take." *Johnson v. Sec'y, Dept. of Corr.*, 643 F.3d 907, 928 (11th Cir. 2011) (quoting *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000)). Counsel's performance is constitutionally adequate so long as "some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial." *White v. Singletary*, 972 F.2d 1218, 1220 (11th Cir. 1992).

There is a strong presumption that counsel made decisions in the exercise of professional judgment. *See Strickland*, 466 U.S. at 690. Where a petitioner bases his

ineffective-assistance claim solely on the trial record, a court "may have no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive." *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003) (quoting *Massaro v. United States*, 538 U.S. 500, 505 (2003)).

Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is more difficult because the standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so. *Richter*, 131 S.Ct. at 788; *see also Johnson v. Sec'y, Dep't of Corr.*, 643 F.3d 907, 911 (11th Cir. 2011) ("Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.").

## *Discussion*

Under Rule 11 of the Rules Governing Section 2254 Petitions, district courts may apply the Federal Rules of Civil Procedure in habeas cases "to the extent that [the civil rules] are not inconsistent with any statutory provisions or [the habeas] rules." *Benjamin v. Sec'y for Dep't of Corr.*, 151 Fed.Appx. 869, 872 (11th Cir. 2005) (citing *Mayle v. Felix*, 545 U.S. 644, 654 (2005)); *see also* Fed.R.Civ.P. 81(a)(4) (2011) (the civil rules "are applicable to proceedings for . . . habeas corpus"). Accordingly, Jackson's amended petition supercedes and replaces in its entirety his original petition. *See Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1219 (11th Cir. 2007); *Malowney v. Fed. Collection Deposit Group*, 193 F.3d 1342, 1345 n.1 (11th Cir. 1999).

Jackson raises seven grounds for relief in his amended petition. In each ground for relief, Jackson alleges he was denied a fair trial. However, Jackson did not fairly present to the state post-conviction court that additional allegation. Jackson did not allege denial of a fair trial in the same claims in state court that he raises here. Thus, the Court will disregard those allegations. *See Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999). Even if the Court could consider them, the allegations lack merit because Jackson has not shown an error implicating fundamental fairness.

**<u>Ground One:</u>**

Jackson alleges he was denied a fair trial and proper preparation for trial due to: (1) the State's withholding of exculpatory evidence from the defense and (2) defense counsel's failure to request a *Richardson* hearing[2] and move for a dismissal predicated on the State's discovery violation.

Jackson argues that the state did not provide the defense the fanny pack containing keys and a wallet that contained a driver's license, social security card, and personal papers bearing Jackson's name and signature. Jackson alleges that he could have irrefutably shown that he was the actual owner of the property and not Llanes had the fanny pack and its contents been presented to the defense before or during trial.

Jackson's Rule 3.850 motion for post-conviction relief stated:

---

[2] Under Florida law, a *Richardson* hearing concerns whether the State may admit evidence that has not been produced in discovery. The trial judge should inquire whether the violation was inadvertent or willful, whether it was trivial or substantial, and what effect the violation had on the ability of opposing counsel to prepare for trial. *See Brazell v. State*, 570 So. 2d 919, 921 (Fla. 1990), *explaining Richardson v. State*, 246 So. 2d 771, 775 (Fla. 1971).

Trial counsel was prejudicially ineffective in failing to request a *Richardson* hearing and failing to file a motion to dismiss the charge based upon the State's deprivation of Defendant's 6th and 14th Amendment Right's [sic] to due process by the State[']s withholding of exculpatory tangible physical material evidence from the defense.

The state post-conviction court rejected the claim without holding an evidentiary hearing:

Specifically, the Defendant claims that the State did not make the following items available to the defense: fanny pack, wallet, and the contents of the wallet. Essentially, the Defendant asserts that if the fanny pack and its contents were presented during trial, he could have shown that he was the actual owner, not Mr. Llanes (the victim in the robbery, whom police and the jury determined to be the owner).

This claim essentially argues that the State failed to disclose evidence which could have exonerated the Defendant. This claim can only be raised if there is a reasonable probability that the result would have differed had the evidence been disclosed. *See Duest v. Dugger*, 555 So. 2d 849 (Fla. 1990); *Hedgwood v. State*, 575 So. 2d 170 (Fla. 1991) (defendant must show the state had evidence, the evidence was suppressed, defense did not have it, nor could have gotten it with due diligence, and a reasonable probability that result would have differed). The Defendant's claim does not meet this standard.

Furthermore, the Defendant argues that there was a *Brady* violation because the State did not have these items at trial. The Court finds that in order for there to be a *Brady* violation, the State has to have constructive possession and knowledge of evidence held by other state agents, including police officers. *See Jones v. State*, 709 So. 2d 512 (Fla. 1998); *Buenoano v. State*, 708 So. 2d 941 (Fla. 1998). In this case, the record clearly reflects that the fanny pack and its contents were inventoried at the time of the incident and returned to Mr. Llanes that day. At trial, both parties knew of the Defendant's claim that he was the true owner of the property and this defense was presented and argued at trial. The jury heard all the testimony, considered the evidence, and convicted the Defendant guilty of robbery. Thus, this ground is denied.

(Dkt. # 1, Ex. C3, pp 3–4) (court's record citations omitted).

Regardless of Jackson's chosen basis for relief, he has not shown a constitutional violation concerning the evidence in question. The officers returned the fanny pack and its contents to Llanes after determining he was the owner. The record indicates that Jackson never told the police officers that he was the actual owner of the fanny pack and its contents. Jackson cannot now blame the police officers and the State for failing to provide the defense the items he could have claimed at the scene. In other words, Jackson could have obtained the evidence through the exercise of due diligence, to wit: claiming that it was his when he saw the officers return the fanny pack to Llanes.

Furthermore, to prevail, "[t]he defendant must also show that the loss of evidence was a result of bad faith on the part of the government or police." *United States v. Lanzon*, 639 F.3d 1293, 1300 (11th Cir. 2011).; *see also United States v. Lindsey*, 482 F.3d 1285, 1293 (11th Cir. 2007) (citing *Arizona v. Youngblood*, 488 U.S. 51, 109 S.Ct. 333, 336–37, 102 L.Ed.2d 281 (1988)). And Jackson must show that the evidence possesses an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means. *United States v. Revolorio-Ramo*, 468 F.3d 771, 774 (11th Cir. 2006) (citing *California v. Trombetta*, 467 U.S. 479, 488 (1984)).

The record shows no conscious effort on the part of the police to suppress exculpatory evidence. *See Trombetta*, 467 U.S. at 488; *Revolorio-Ramo*, 468 F.3d at 775. Rather, Jackson at best alleges that the items "were erroneously released at the arrest scene by law

enforcement." As petitioner does not allege, and the Court cannot find, bad faith on the part of either the prosecution or the police, no *Brady* violation exists. *James v. Singletary*, 957 F.2d 1562, 1567 n.4 (11th Cir. 1992).

Notwithstanding the potentially exculpatory nature of the evidence, the record demonstrates that Jackson could have cross-examined the law enforcement officers who handled the fanny pack to "attempt to raise doubts in the mind of the factfinder." *Trombetta*, 467 U.S. at 490. This opportunity, coupled with the testimony of Jackson at trial, constituted comparable evidence. *See Revolorio-Ramo*, 468 F.3d at 774–75.

Because no *Brady* violation exists regarding the fanny pack and its contents, Jackson cannot prevail on his claims that he has raised here. Ground One does not warrant habeas corpus relief because Jackson failed to show that the post-conviction court's denial of this claim is improper under § 2254(d).

**<u>Ground Two:</u>**

Jackson alleges that the State's failure to provide the defense exculpatory and impeaching evidence, and defense counsel's failure to file a motion in limine concerning the State's discovery violation resulted in a denial of Jackson's right to a fair trial, right to confrontation, and right to a full and complete cross-examination of the State's witnesses.

Jackson makes no mention of any additional exculpatory and impeaching evidence aside from the fanny pack and the contents in the fanny pack that have already been addressed in Ground One.

Jackson's Rule 3.850 motion for post-conviction relief stated:

The Defendant was prejudicially denied of his Sixth Amendment right to confrontation and his right to a full and complete cross-examination by the State's withholding of and failure to make available to the defense tangible evidence. Therein, trial counsel was prejudicially ineffective in failing to file a motion in limine excluding the State from introducing testimony predicated upon or relating to the tangible evidence which was withheld by the State.

The state post-conviction court rejected this claim without holding an evidentiary hearing:

In Ground 2, the Defendant claims that his counsel was ineffective for failing to file a motion in limine with respect to the items mentioned in Ground 1. The Court finds this Ground is duplicative of Ground 1 and denies it accordingly.

(Dkt. # 1, Ex. C3, p 4).

Here, all of Jackson's arguments rely on the fanny pack and its contents as exculpatory impeaching evidence that the State erroneously kept from him. As already discussed in Ground One, Jackson failed to show the State withheld the evidence in question because it was returned to Llanes, and Jackson otherwise failed to show a *Brady* violation regarding those items. These failures undermine Jackson's claims here.

Ground Two does not warrant habeas corpus relief because Jackson failed to show that the post-conviction court's denial of this claim was improper under § 2254(d),.

**<u>Ground Three:</u>**

Jackson alleges that defense counsel's failure to impeach the State's key witness with his prior inconsistent statements resulted in a denial of Jackson's right to a fair trial and right to effective counsel.

Jackson directs this Court to the following statements Llanes made at trial, compared to his previous statements:

1. That "[I] was dropped off by friends to go to an adult bookstore." During deposition Llanes stated "[I] went to a grocery store."

2. That "[I] called his friend for a ride." In the police interview, Llanes stated "[I] called [my] friend to complain about being harassed."

3. That "[Jackson] approached from between Applebees and Hollywood 20." During a pre-trial hearing Llanes stated "[Jackson] approached from the opposite side of the street of Applebees."

4. That "[Jackson] punch [sic] [me] in the left side of [my] face." At the pre-trial hearing Llanes stated "[Jackson] punched [me] in the right side of the face."

5. That "[Jackson] stated nothing other than ask for a light." In the P.C.A.[3] Llanes stated "[Jackson] stated give me all of your money." Yet again, during trial Llanes stated "[Jackson] stated I am sure you do."

6. That "[Jackson] punched [me] and [I] got up quickly." During the victim interview he stated "[I] was punched and passed out." Yet again, in trial and in the P.C.A. Llanes stated "[I] was choked unconscious."

7. That "when [I] came to, [Jackson] was standing over [me] trying to unfasten [my] fanny pack." During the police interview he stated "when [I] came to, [Jackson] was on [my] back choking [me]."

---

[3] P.C.A. refers to the Probable Cause Affidavit completed by Officer Wagner and affirmed by Officer Conway (Resp. Appx. B, Ex. 3, Ex. A); (Dkt. # 4, Ex. 1-B).

In the P.C.A. he stated "when [I] came to, [I] attempted to pursue [Jackson]."

8.      That "while at the scene the police never showed [me] the fanny pack." During deposition Llanes stated "the police asked [me] if the fanny pack was [mine]."

(Dkt. # 4, p 14–15) (record citations omitted).

Jackson asserts the trial hinged on the credibility of Llanes. Jackson points out that during selection, the jury indicated that consistencies in testimony would be the controlling factor in its decision. Jackson argues that but for counsel's errors, there is a reasonable probability the jury would have reasonably doubted his guilt.

Jackson's Rule 3.850 motion for post-conviction relief stated:

Trial counsel was prejudicially ineffective in failing to impeach the State's primary witness with prior inconsistent statements.

The state post-conviction court rejected this claim without holding an evidentiary hearing:

In Ground 3, the Defendant claims that his counsel was ineffective for failing to impeach the State's witness with prior inconsistent statements. The Court has reviewed each and every "inconsistency" cited by the Defendant and finds that none pass the prejudice prong of *Strickland*.

(Dkt. # 1, Ex. C2, p 1).

The decision to cross-examine a witness and the manner in which the cross-examination is conducted are tactical decisions "well within the discretion of a defense attorney." *Fugate v. Head*, 261 F.3d 1206, 1219 (11th Cir. 2001) (quoting *Messer v. Kemp*, 760 F.2d 1080, 1090 (11th Cir. 1985)). A federal habeas court will not entertain claims which

are purely tactical decisions of defense counsel. *See Fugate*, 261 F.3d at 1219. Further, all of the inconsistencies in the victim's testimony that Jackson has advanced are inconsequential matters. *See Mills v. Singletary*, 63 F.3d 999, 1021 n.36 (11th Cir. 1995). "Claims that an attorney should have cross-examined further on inconsequential matters do not establish constitutionally deficient performance." *Johnson v. Alabama*, 256 F.3d 1156, 1186 (11th Cir. 2001) (citing *Mills*, 63 F.3d at 1021 n.36).

Counsel is strongly presumed to make decisions in the exercise of professional judgment. *See Strickland*, 466 U.S. at 690. Whether counsel would have been more effective had he impeached Llanes with his alleged inconsistencies requires an inappropriate use of hindsight to assess the effectiveness of counsel. *See Delap v. Dugger*, 890 F.2d 285, 298 (11th Cir. 1989). Jackson has not established that no competent attorney would have taken the action that counsel, here, chose. Jackson has not overcome the strong presumption that counsel's performance was reasonable and adequate. *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994). Thus, Jackson has failed to show that counsel's performance was constitutionally deficient in failing to impeach the victim on prior inconsistent statements.

Further, speculation about what witnesses could have said is not enough to establish prejudice. *See generally Grisby v. Blodgett*, 130 F.3d 365, 373 (9th Cir. 1997); *see also White v. Singletary*, 972 F.2d 1218, 1220 (11th Cir. 1992) ("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight."). In light of the minimal nature of the alleged inconsistencies, the Court concludes that the trial's outcome would not have changed if Jackson's counsel brought any

of the alleged inconsistencies before the jury. *See Delap*, 890 F.2d at 296–98. "Absent a showing of a single specific instance where cross-examination arguably could have affected the outcome of either the guilt or sentencing phase of the trial, a petitioner is unable to show prejudice necessary to satisfy the second prong of *Strickland*." *Fugate*, 261 F.3d at 1219; *Messer v. Kemp*, 760 F.2d 1080, 1090 (11th Cir. 1985). Jackson has failed to satisfy the prejudice prong of *Strickland*.

Since Jackson has not shown deficient performance and consequent prejudice, he has not met his burden under *Strickland*. Ground Three does not warrant habeas corpus relief.

**<u>Ground Four:</u>**

**<u>Part A</u>**

For the first part of Ground Four, Jackson alleges denial of a fair trial and ineffective assistance of counsel due to counsel's advice regarding his right to file pretrial motions. Jackson filed a timely notice requesting discovery from the State. Jackson alleges the State prejudicially failed to make available to the defense the fanny pack and the fanny pack's contents, which Jackson believes was material exculpatory impeachment evidence. Jackson further alleges that as a result of the State's failure to disclose and make available the fanny pack and its contents, Jackson sought the advice of defense counsel regarding alternative defenses and pre-trial motions that were available. Jackson also alleges that his counsel erroneously and prejudicially misadvised him that there was neither an alternative defense nor any pre-trial motion available to him.

Jackson raised this sub-issue in his Rule 3.850 motion for post-conviction relief. The state post-conviction court rejected it without holding an evidentiary hearing:

> In Ground 4, the Defendant claims his counsel was ineffective because she failed to file pre-trial motions to suppress or obtain evidence. The Court finds this claim is duplicative of Grounds 1 and 2; as such, it is also denied.

 (Dkt. # 1, Ex. C3, p 4).

As already discussed in Ground One, the State could not have furnished the items in question to the defense because the State did not possess them. The fanny pack and its contents were returned to Llanes because Jackson did not claim ownership.  As also discussed in Ground One, Jackson has failed to show a *Brady* violation regarding the fanny pack and the contents in the fanny pack. This failure undermined Jackson's claim that he was consequently prejudiced by defense counsel's advice regarding his pretrial motion seeking discovery from the State. Accordingly, Jackson does not establish any consequent prejudice under *Strickland*.

## **Part B**

Jackson next argues that he was denied a fair trial and effective counsel due to defense counsel's erroneous and prejudicial advice that the State could not use Jackson's prior out-of-state convictions against him.

Jackson raised this sub-issue in his Rule 3.850 motion for post-conviction relief:

> Trial counsel was prejudicially ineffective in . . . misadvis[ing] Defendant as to the State's ability to use [Pennsylvania] records against Defendant.

(Resp. Appx. B, Ex. 1, 14).

The state post-conviction court rejected this claim without holding an evidentiary hearing:

> The second subclaim regarding the out of state convictions is without merit. Prior convictions are appropriately considered for sentencing enhancement purposes regardless of whether they were excluded for trial purposes. Fla. R. Crim. P. 3.704 (2007).

(Dkt. # 1, Ex. C1, p 3).

In Jackson's reply memorandum, he contends the post-conviction court failed to adequately address this claim. Jackson argues his claim was not based on whether the out-of-state convictions were improperly introduced contrary to law, as the post-conviction court concluded, but rather his claim was based on his counsel's erroneous advice that the State was prohibited from introducing the convictions throughout the *entire* trial, including for the court's consideration at Jackson's sentencing.

Jackson concedes that his classification as a habitual felony offender was not directly predicated on those out-of-state convictions, however Jackson asserts that those convictions could have influenced the trial court's decision to impose the habitual offender sentence. As Jackson points out, sentencing under Florida's habitual offender statute is permissive, not mandatory. *State v. Matthews*, 891 So. 2d 479, 489 (Fla. 2004). And "once the sentencing court has determined that a defendant meets the habitual offender criteria, it must make the decision whether to sentence him or her as such and must either impose a habitual offender sentence or impose sentence without regard to the habitual offender statute." *Id.*(internal quotations omitted).

Jackson contends the additional points calculated from his out-of-state convictions substantially influenced the court's decision to sentence Jackson to the maximum penalty for his crime. Jackson asserts the trial court's failure to indicate it would have imposed the same sentence absent its awareness of Jackson's out-of-state convictions is enough to create a reasonable probability that the outcome would have differed. However, Jackson's reliance on the trial court's silence is misplaced because he points to nothing in the record to support his argument that the trial court relied on the out-of-state convictions. Thus, Jackson cannot rely on this argument to support his claim.

Jackson next argues in his reply that he would not have proceeded to trial had counsel informed him of the state's ability to introduce the out-of-state convictions for the court's consideration at sentencing; he would have accepted the State's plea offer. Aside from alleging the plea offer was "substantially less" than the sentence he actually received, Jackson does not describe the terms of the plea offer and the Court is unable to discern that fact from the record.[4] Furthermore, Jackson did not allege in his Rule 3.850 motion that the terms of the state's plea offer was "substantially less" than his sentence. Thus, the Court cannot consider that additional conclusory allegation because the Court's review is limited to the record that was before the state court that adjudicated Jackson's Rule 3.850 motion. *See Cullen v. Pinholster*, — U.S. —, 131 S.Ct. 1388, 1398 (2011) (holding that AEDPA

---

[4] Of course, the Court is not obligated to "mine the record, prospecting for facts that the habeas petitioner overlooked and could have, but did not, bring to the surface in his petition." *Chavez v. Sec'y Florida Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011).

review is limited to the record that was before the state court that adjudicated the claim on the merits).

Even assuming Jackson's remaining allegations are true, Jackson has not properly developed the claim's factual basis. *See Saunders v. United States*, 278 Fed.Appx. 976 (11th Cir. 2008). In *Saunders*, the petitioner alleged that his counsel denied him the opportunity to knowingly accept or reject a plea offer by giving him incorrect advice about sentencing ramifications. *Id.* at 977. The petitioner asserted that but for this erroneous advice, he would have accepted a plea offer. *Id.* The petitioner believed that he was prejudiced because his trial "led to a substantially harsher sentence than would have been available under a plea agreement." *Id.* at 977–78. The court noted that the petitioner "fail[ed] to disclose the details of his alleged plea offer" and therefore "he has failed to allege 'reasonably specific, non-conclusory facts' with respect to his claim such that there was a reasonable probability sufficient to undermine confidence in the outcome." *Id.*

Here, Jackson's claim presents the same defects discussed in *Saunders*. Jackson has not properly developed this claim's factual basis, and accordingly, Jackson has not established prejudice. Ground Four does not warrant habeas corpus relief.

**<u>Ground Five:</u>**

Jackson alleges he was denied a fair trial and effective assistance of counsel based on defense counsel's failure to object to the court holding a hearing on the State's motions in limine while Jackson was not present.

Jackson raised this issue in his Rule 3.850 motion for post-conviction relief:

> Trial Counsel was prejudicially ineffective for failing to produce defendant at, or objecting to the court conducting a hearing on the State's motion in limine without defendant being present.

(Resp. Appx. B, Ex. 1, 18).

The state post-conviction court rejected this claim without holding an evidentiary hearing:

> In Ground 6, the Defendant claims that his counsel was ineffective for failing to allow him to be present at a pre-trial hearing. The Court finds that although the Defendant was not present during the beginning of the hearing for that pre-trial motion (because he was changing clothes), he was not prejudiced by his absence under *Strickland*. The jury was able to hear testimony from the Defendant and the State's witnesses regarding this issue of who owned the fanny pack and whether it contained drugs or drug paraphernalia. As such, this claim is denied.

(Dkt. # 1, Ex. C3, p. 4).

Jackson alleges that his absence during the hearing prejudiced him from objecting to the State's motions in limine because he would have instructed defense counsel to object to the State's motions. Jackson asserts it was essential for his theory of defense to establish the presence of drugs and drug paraphernalia. Jackson notes the case was founded on credibility, and therefore Jackson sought to cast reasonable doubt on Llanes's credibility by discussing Llanes and Jackson's drug use prior to the altercation.

Jackson has not shown a reasonable probability that the court would have decided the motion differently, even if Jackson had been present at the hearing. The court still would have heard Jackson's testimony against that of the police officers, as it was at trial. Jackson

has not shown consequent prejudice from defense counsel's failure to object at the pre-trial hearing. And Jackson has failed to show that the post-conviction court's application of *Strickland* to this claim was unreasonable under § 2254(d).

Although Jackson mentions in his reply that he has a constitutional right under the 14th Amendment to be present at the hearing, he did not raise this issue in his amended petition. Having improperly presented the issue, the Court will disregard it. Even if the Court were to consider it, however, the claim lacks merit because, as stated above, Jackson cannot show a reasonable probability that his presence at the hearing would have altered the court's decision.

Ground Five does not warrant habeas corpus relief.

**Ground Six:**

In his original petition, Jackson alleged ineffective assistance of counsel based on defense counsel's failure to object to the prosecution recalling a witness during rebuttal to impeach Jackson's exculpatory story with what he calls his post-*Miranda* "silence." In his amended petition, Jackson now alleges he was denied a fair trial and due process of law based on the State's violation of Jackson's right to remain silent and protection from self-incrimination and also from counsel's failure to object.

Jackson stated in his Rule 3.850 motion for post-conviction relief that:

Trial counsel was prejudicially ineffective for not objecting to the prosecutor improperly and impermissibly calling a "rebuttal" witness, especially in light of the fact that the judge advised counsel that she should object because calling the rebuttal witness was impermissible. Therefore, it is reasonable to assume

> the trial court would have sustained the objection and excluded the witness' testimony. The "rebuttal" witness' testimony was harmfully prejudicial.

(Resp. Appx. B, Ex. 1, 18) (citation to court's record omitted).

The state post-conviction court rejected this claim without holding an evidentiary hearing:

> In Ground 10, the Defendant claims that his counsel was ineffective because she failed to object to the prosecutor improperly calling a rebuttal witness. The record reflects that the Court and both counsel discussed whether recalling Detective Jackson was proper. Clearly, defense counsel strategically made a decision to not object to this witness because it then allowed her to explore other areas for the defense.
>
> Under *Strickland*, "a defendant must establish conduct on the part of counsel that is outside the broad range of competent performance under prevailing professional standards." Furthermore, trial tactics used for strategy are to be left alone unless performance is outside the range of "reasonably competent counsel." *See Stephens v. State*, 552 So. 2d 1082. Therefore, counsel has wide latitude in determining strategy; and the Court finds that defense counsel acted within her discretion. Therefore, this claim is denied.

(Dkt. # 1, Ex. C3, p. 5) (court's record citations omitted).

Here, the record reflects that Jackson made a post-arrest statement to the police. Therefore, Jackson's claim that the State impermissibly used his post-*Miranda* silence against him is meritless. *See United States v. Pearson*, 746 F.2d 787, 794 (11th Cir. 1984) (where defendant had made post-arrest statements that were admitted into evidence, prosecutor did not improperly use defendant's post-arrest silence against him).

Jackson's remaining claims fail because Jackson has not established a constitutional violation. Jackson is not entitled to relief on his claim that defense counsel's failure to object

to the prosecutor's recall of a rebuttal witness amounted to constitutionally ineffective assistance of counsel. Jackson has not shown defense counsel's performance fell below constitutionally adequate standards. And Jackson cannot show prejudice in defense counsel's failure to object. Therefore, Jackson failed to show that the post-conviction court's denial of this claim was improper under § 2254(d). Ground Six does not warrant habeas corpus relief.

### **Ground Seven:**

Jackson alleges he was denied a fair trial and effective assistance of counsel based on defense counsel's failure to object to the prosecutor's statements of facts not in evidence.

In his original petition, Jackson directed the Court to the following seven statements made by the prosecutor at closing argument:

1.     They [police officers] were able to corroborate that force, violence, assault, and putting in fear took place as well because they testified about his injuries that were consistent with the description that Mr. Llanes talked about force and violence.

2.     When the Defendant was moving along that wall of the Hollywood 20 concealing himself, not on the regular sidewalk but close to the wall, hugging the wall . . . .

3.     There were absolutely no discrepancies of any material matter. Was there a wallet? Was there not a wallet?

4.     Mr. Llanes did not want to be reminded . . . He didn't want to come in here and talk about the facts of the case . . . [.] He didn't want to tell six strangers . . . . He didn't want to re[-]live the fact . . . [.]

5.     He wouldn't have flagged down the cops . . . [.] No, he would have just skulked into the planter and wait . . . [.] But he was concerned about his

property. He was concerned about what happened to him . . . [.] And he didn't think it was fair . . . he felt it was very important as one of the weaker members of society to flag down cops . . . [.]"

6.     He didn't have any time to think. He didn't have any time to fabricate. He didn't have time to make up a story.

7.     Defendant was just a few feet away skulking along the side of Hollywood 20 so nobody would see him.

Jackson raised this issue in his Rule 3.850 motion for post-conviction relief. The state post-conviction court rejected this claim without holding an evidentiary hearing:

In Ground 11, the Defendant claims that his counsel was ineffective because she failed to object to the prosecutor's references to facts not in evidence, referencing statements made by the State during closing arguments. The record reflects that the State's closing argument was proper. The purpose of the closing argument is for the attorney to review evidence and testimony for the jury. The attorney may offer inferences, which may be drawn from the evidence. *See Bertolotti v. State*, 476 So. 2d 130 (Fla. 1985). As such this claim is denied.

(Dkt. # 1, Ex. C3, p. 5).

Jackson did not list the above statements in his amended petition. Rather, in the accompanying "Supporting facts" section to this claim, Jackson wrote "During trial the prosecutor made several statements to 'facts' that were not in evidence." Jackson therefore has not developed the claim's factual basis. Even assuming somehow that Jackson referred to his original petition's list of statements, the claim lacks merit.

Jackson has not shown that the above statements were improper. In both Florida and federal courts, the prosecutor is afforded wide latitude in arguing to a jury. *Lukehart v. State*,

70 So. 3d 503, 523 (Fla. 2011); *Breedlove v. State*, 413 So. 2d 1, 8 (Fla. 1982); *see also United States v. Pearson*, 746 F.2d 787, 796 (11th Cir. 1984) (noting that closing argument is intended to "assist the jury in analyzing, evaluating and applying the evidence."); *United States v. Johns*, 734 F.2d 657, 663 (11th Cir. 1984) (noting that a prosecutor is not limited to a bare recitation of the facts, that the prosecutor may "comment" on the evidence, and that the prosecutor may "state his contention as to the conclusions the jury should draw from the evidence.").

Although the afforded latitude does not extend to permitting improper argument, *Gore v. State*, 719 So. 2d 1197, 1200 (Fla. 1998), "[l]ogical inferences may be drawn, and counsel is allowed to advance all legitimate arguments." *Lukehart*, 70 So. 3d at 523 (quoting *Thomas v. State*, 748 So. 2d 970, 984 (Fla. 1999)).

Viewed in context, the prosecutor was simply urging the jury to draw certain conclusions from the evidence, not interjecting her personal views on the evidence or Jackson's guilt, the former which is proper under federal law. *See United States v. Bernal-Benitez*, 594 F.3d 1303, 1316 (11th Cir. 2010).

Even if the comments were improper, Jackson cannot show that the remarks so "infected the trial with unfairness" as to offend due process. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). The trial court instructed the jury that the attorneys' closing arguments were not evidence. (Resp. Appx. C, Ex. 2, Vol. 3, T 220). A jury is presumed to follow a court's instructions. *Brown v. Jones*, 255 F.3d 1273, 1280 (11th Cir. 2001). The Court is unable to conclude after thoroughly reviewing the record that there is a reasonable probability the jury

would have returned a different verdict. Because Jackson is not entitled to relief based on prosecutorial misconduct, he is not entitled to relief on his claim that defense counsel's failure to object to the prosecutor's statements amounted to constitutionally ineffective assistance of counsel.

Moreover, Jackson has not shown that counsel performed deficiently. First, the record shows that defense counsel objected eight times throughout the State's closing argument. The trial court sustained some of those objections, and overruled the rest. At one point, defense counsel asked for a sidebar conference where she expressed to the court her concern that the prosecutor had repeatedly made improper argument to the jury and counsel additionally moved for a mistrial. The court agreed that the prosecutor's comments were improper. The prosecutor agreed to correct her argument. Given defense counsel's repeated objections to the prosecutor's closing argument, Jackson has not overcome the strong presumption that defense counsel's performance was adequate.

Even assuming that counsel performed deficiently, Jackson demonstrates neither that an objection would have altered the outcome of the trial, nor that counsel would have succeeded on a motion for mistrial based on the challenged statement. *See Duest v. State*, 462 So.2d 446, 448 (Fla. 1985) (noting that a mistrial is appropriate only when the error committed was so prejudicial as to vitiate the entire trial). Jackson cannot show consequent prejudice in defense counsel's failure to object to prosecutorial misconduct that, itself, does not warrant relief. Therefore, Jackson failed to show that the post-conviction court's

application of *Strickland* to this claim was unreasonable under § 2254(d). Ground Seven does not warrant habeas corpus relief.

### **Ground Eight:**

In his original petition, Jackson alleges that defense counsel's cumulative errors and omissions in their collective import changed the outcome of the proceedings and thus constituted fundamental error. Jackson presumably abandoned this claim because he did not include it in his amended petition. Assuming Jackson did not abandon this claim, it still fails on the merits.

Jackson raised this issue in his Rule 3.850 motion for post-conviction relief:

> Defendant asserts that even if none of the errors and omissions of trial counsel, standing alone, constitutes harmful or fundamental errors and omissions, in their collective import, does constitute fundamental error which changed the outcome of the proceedings.

(Dkt. # 10, Apx. B, Ex. 1, p. 35).

The state post-conviction court rejected this claim without holding an evidentiary hearing:

> In Ground 17, the Defendant claims that his counsel's cumulative errors constitute ineffective assistance of counsel. The Court finds that the Defendant's claims are without merit. Therefore, all grounds and the Defendant's Motions are denied.

(Dkt. # 1, Ex. C3, p. 6).

The state post-conviction court presumed Jackson's claim was one of ineffective assistance of counsel. However, Jackson did not allege that in his Rule 3.850 motion. Instead, Jackson appears to have alleged that counsel's errors, when considered cumulatively,

rendered the trial fundamentally unfair. It is unclear whether the state appellate court also analyzed this claim as one of ineffective assistance of counsel because it summarily affirmed the post-conviction court's decision. However, Jackson's claim fails regardless of whether it is analyzed as an ineffective assistance of counsel claim or a claim of fundamental error.

### *Ineffective Assistance of Counsel*

The Supreme Court has not directly addressed the applicability of the cumulative error doctrine in the context of an ineffective assistance of counsel claim. *Forrest v. Florida Dep't of Corr.*, 342 Fed. Appx. 560, 564 (11th Cir. 2009). However, the Supreme Court has held in the context of an ineffective assistance claim, that "there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt." *United States v. Cronic*, 466 U.S. 648, 659 n.26 (1984).

In light of *Cronic* and the absence of Supreme Court precedent applying the cumulative error doctrine to claims of ineffective assistance of counsel, the state court's decision is not contrary to or an unreasonable application of clearly established federal law. *See also Borden v. Allen*, 646 F.3d 785, 823 (11th Cir. 2011) (declining to answer the question of whether a claim of ineffective assistance of counsel may be based on the "cumulative effect" of multiple non-prejudicial errors by counsel when no individual error standing alone would warrant a finding of prejudice under *Strickland* because petitioner did not sufficiently plead facts that would establish prejudice, cumulative or otherwise).

Accordingly, Jackson's claim, if analyzed as ineffective assistance of counsel by cumulative error, lacks merit.

### *Fundamental Error*

Jackson's claim also fails if analyzed as one raising fundamental error or unfairness. "[T]he 'cumulative effect' of multiple errors may so prejudice a defendant's right to a fair trial that a new trial is required, even if the errors considered individually are non-reversible." *United States v. Ramirez*, 426 F.3d 1344, 1353 (11th Cir. 2005) (per curiam) (quotation marks and citation omitted). However, the absence of any individual error precludes the existence of any cumulative error. *United States v. Diaz*, 377 Fed.Appx. 883, 892 (11th Cir. 2010) (citing *United States v. Waldon*, 363 F.3d 1103, 1110 (11th Cir. 2004) (per curiam)). Having found no individual error, Jackson's claim of cumulative error lacks merit. *See id.* at 893.

Ground Eight does not warrant habeas corpus relief.

### *Evidentiary Hearing*

Jackson is not entitled to an evidentiary hearing on any of his grounds for relief because "it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief." *Broadwater v. United States*, 292 F.3d 1302, 1303 (11th Cir. 2003).

It is therefore **ORDERED** AND **ADJUDGED** that:

1.      Jackson's original Petition for Writ of Habeas Corpus (Dkt. 1), having been superseded by the Amended Petition for Writ of Habeas Corpus (Dkt. 4), is **DENIED** as moot.

2.      The Amended Petition for Writ of Habeas Corpus (Dkt. 4) is **DENIED**.

3.      The Clerk is directed to enter judgment in favor of Respondents and against the Petitioner, terminate any pending motions, and close this file.

## CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). Id. "A [COA] may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2). To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463

U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

**DONE** and **ORDERED** in Tampa, Florida on March 27, 2012.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies Furnished To**:
Counsel/Parties of Record

*F:\Docs\2011\11-cv-445.deny 2254 Jackson.wpd*